IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SNL FINANCIAL, LC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 3:09cv00010 |
| | ) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) |
| | ) |
| Defendant. | ) |

## OPPOSITION TO SNL'S MOTION FOR SUMMARY JUDGMENT

Defendant Philadelphia Indemnity Insurance Company, by counsel, filed its Opposition to the Motion for Summary Judgment filed by plaintiff SNL Financial, LC and states as follows:

SNL's Cross-Motion for Summary Judgment has one glaring and overriding flaw that is fatal to its cause. Rather that comparing the contractual language of coverage in the Philadelphia policy to the undisputed facts giving rise to its duty to report the Greenberg claim, SNL instead seems to focus on the subjective motivations of members of Philadelphia's claims department (SNL's Memorandum at pp. 6-7). As this is a contract case, the analysis and procedure employed by Philadelphia in its decision to disclaim coverage are irrelevant. What matters is an objective look at the facts known to SNL and their inexplicable failure to understand and act upon their own duties under the policy.

SNL argues there was no "claim", no request for "relief" and no "litigation" prior to October 20, 2008. Its after-the-fact rationalization is belied by its actions at the time the letters were received. It is undisputed that SNL retained a lawyer immediately,

referred to the Schwartz letters as "legal action", tried to "get a demand", negotiate a settlement, and investigate the underlying facts to assess exposure. SNL then saw (and physically touched) a draft complaint seeking $16 million, solicited and received a demand to settle for $1.2 million, responded to the demand, and waited for the suit to be filed. SNL and its counsel took the Greenberg claim seriously, knew it was not just an inquiry or idle threat, yet never placed its insurance carrier on notice of the claim.

SNL's rationale that no claim was presented defeats the purpose of policy requirements of claim notification, and the underwriting requirements. Philadelphia had a right to know the true facts underlying the risk it was undertaking. SNL knew Greenberg was making a claim for employment discrimination against the company and it took action to defend against it – with the remarkable exception of notifying its insurance carrier. The explanation for this failure is readily understood from the testimony of the SNL witnesses. No one knew what the reporting terms and conditions were, as no one had read the policy. The "financial team" in charge of insurance claims such as the Greenberg matter consisted of Dan Oakley, who delegated the job to SNL's Controller. The Controller left the job in May and was replaced by Corinna Hearn, who started in June and was not given any training as to the reporting of insurance claims. Whatever the explanation, SNL's apparent ignorance regarding its duty to timely report claims is no excuse.

It is perhaps also not surprising that SNL waited to report the Greenberg claim, as the policy's $1,000,000 limit of liability may not have been enough to cover the potential damages of the Greenberg case, which sought $16,000,000 in damages. They tried, but failed, to increase these limits from $2 million up to $10 million at the time of renewal.

At the time of the request for the increase, SNL had received a demand to settle in the amount of $1,200,000.

The testimony of Philadelphia's witnesses or the insurance agent regarding the policy is not determinative, as the policy speaks for itself. Similarly, whether or not SNL thought the January letters triggered the policy, does not change the result in this matter. The policy language is interpreted based on the undisputed facts as a matter of law. "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Graphic Arts Mutual Ins. Co. v. C.W. Warthen Co., Inc., 240 Va. 457, 459 (1990). "We must interpret the contract as written. We are not free to rewrite its terms and thereby extend coverage." Id. at 460.

As SNL correctly states in footnote 1 of their Memorandum in Support of Motion for Summary Judgment: "In this case, of course, the policy itself contains a definition of the term 'claim,' which definition is controlling." The term claim is described in the Policy as "a written demand for monetary or non-monetary relief." Additionally, the Policy supplements the definition of a claim with the following language: "A claim shall be considered made when an Insured *first receives notice* of the claim." Thus, first notice of a demand for monetary or non-monetary relief is sufficient, under the Policy, to trigger the Insured's reporting requirements under the contract.

SNL cites to Clarke v. Tyler, 30 Gratt. 134, 1878 WL 5859 (Va. 1878) and Stamie E. Lyttle Company, Inc. v. County of Hanover, 231 Va. 21, 341 S.E.2d 174 (1986), cases dealing with statutory construction, in an attempt to support their premise that two *demand letters*, of the type customarily sent by attorneys prior to initializing formal law

3

suits, sent by Greenberg's attorney to SNL prior to filing a formal law suit, are "certainly" not demands for relief. The Schwartz letters clearly request redress for a wrongful act, discrimination, by SNL.  Whether explicitly monetary or not, the redress according to the policy definition, simply needs to be in the form of monetary or non-monetary relief.  SNL and its counsel understood that Greenberg was either looking for money, or other relief, such as reinstatement (Statement Nos. 7, 25).  Furthermore, analysis of the definition of terms is irrelevant in this matter, where the terms already clearly defined.  SNL's contention that in order for communications to qualify as a "demand," the words "demand for relief" would necessarily need to be present is without merit.  Such is simply not the case when the policy defines "claim" and provides that the claim is made when the Insured "*first receives notice* of the claim".

     SNL also cites to Hyde v. Fidelity & Deposit Company of Maryland, 23 F. Supp. 2d 630, 633 (D. Md. 1998) to show that in some policies, there is a difference in the policy language between a claim and notice of a claim. The court stated that the policy in that case, in its language "distinguishes between notice of claims and claims," drawing a distinction between notice of a claim and the official filing of one. Id.  The glaring difference in this matter is that the term "claim", not defined in the policy in Hyde, is clearly defined in the Policy at issue.  The Hyde case looked to Black's Law Dictionary to define "claim" and determined that it meant an assertion of a legal right asserted in a court. Id.  Since no court action had been filed, the court found that the insured did not have notice of a claim, despite being apprised of an investigation of the company's directors.  Here, there is no such requirement that the demand for relief be made by the filing of a complaint.  The Policy unambiguously requires the demand to be in writing,

4

and for monetary or non-monetary relief. The Hyde analysis is thus distinguishable and not applicable to the instant action.

The other cases cited by SNL from other jurisdictions are likewise inapposite, as they also deal with insurance policies that did not define the term "claim." St. Paul Mercury Ins. Co v. Foster, 268 F. Supp.2d 1035, 1047-1048 (C.D. Ill. 2003); Hoyt v. St. Paul Fire and Marine Insurance Co., 607 F.2d 864, 866 (9th Cir. 1979)(distinguishing "inquiry" from "claim"). As noted above, the Policy at issue does define claim, so that the sole inquiry is whether two demand letters, the knowledge of a draft complaint, continuous inquiry into the legal status of the demand letters and the settlement demand constituted notice to SNL that Greenberg was seeking monetary or non-monetary relief from SNL's alleged acts of discrimination.

SNL mischaracterizes the testimony of Ann Bronczyk, claiming that she confuses the definition of claim with the notice requirements. SNL argues that prior to October 20, 2008, it had notice that a Claim, as defined in the Policy, might at some point be asserted against it, but had not yet been asserted (SNL's Memorandum at p. 12). This strained reasoning is not supported by Virginia case law, which requires notification of a claim when it "reasonably appears to the insured that the policy may be implicated." Penn-American Ins. Co. v. Mapp, 461 F.Supp.2d 442, 453 (E.D.Va.2006). However, Ann Bronczyk's testimony aligns with the case law previously cited supporting Philadelphia's position that the January letters from Schwartz would place a reasonable person on notice that Greenberg was making a reportable claim for discriminatory conduct, with the demand to work out an "amicable resolution" for some sort of monetary or non-monetary relief. If there was any lingering doubt that the two Schwartz

5

letters pertained to a claim for monetary or non-monetary relief, SNL's attorney Gibbons' first conversation with Schwartz cleared things up with Schwartz mentioning a draft complaint. There can be no dispute then that during this conversation, the earlier letters were confirmed as a demand for monetary or non-monetary relief. This was followed by the actual review of the written complaint for money damages by SNL's attorney, Clark. At this point there was no excuse for not reporting the Greenberg claim, and yet there was still no reporting until late October. In the meantime, the policy was renewed on the basis that there were no claims, and no known litigation. At the time of renewal, SNL had received a settlement demand for $1,200,000, and sent a response, all without reporting the claim to Philadelphia.

SNL excuses its failure to disclose the known Greenberg suit in its Renewal Application by blaming Philadelphia for not phrasing the question in its application differently (SNL's Memorandum at pp. 16-17). Citing Philadelphia Indemnity Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F.Supp.2d 442 (S.D.N.Y. 2005), a New York case involving a legal malpractice policy issued by Philadelphia, SNL essentially argues that it would have disclosed the Greenberg matter if Philadelphia had asked the question differently. While the application and policy in the New York case is entirely irrelevant to any contract analysis in the present case, the term "litigation" in the Renewal Application in the instant case would encompass the Greenberg complaint, and SNL cannot rely on other applications to excuse its failure to apprise Philadelphia of the Greenberg suit.

Lastly, SNL cannot recover its attorneys' fees or costs as there has been no "bad faith" in this instance. Va. Code § 38.2-209(A) reads as follows:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

The bad faith analysis under this section requires consideration of the following questions: whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact. Park Center III Ltd. Partnership v. Pennsylvania Mfrs. Assoc., 30 Fed. Appx. 64, 74 (4th Cir. 2002), *citing* CUNA Mutual Ins. Society v. Norman, 237 Va. 33, 375 S.E.2d 724, 727 (1989). In Park Center, the court concluded that the insurer acted in good faith since it "had a legitimate, arguably supportable, basis for its refusal to pay the claim." Id. In this case, Philadelphia has presented extensive evidence indicative of the reasonableness of its position on coverage and claim denial, which was based on its investigation of the facts of this case. Even in the event that Philadelphia's arguments are rejected by this Court, its position is not so unreasonable as to demonstrate bad faith. *See* Tiger Fibers, LLC v. Aspen Specialty Ins. Co., 594 F.Supp.2d 630, 655 (E.D.Va. 2009). In view of this objective evidence, this case does not fall under the scope of Va. Code § 38.2-209(A), and SNL's request for attorneys' fees

should be denied.

The January letters and subsequent information received by SNL clearly constituted a "claim" as defined in the Policy that was not reported to Philadelphia for <u>nine</u> <u>months</u>. SNL's failure to notify Philadelphia was a breach of a condition precedent that bars coverage for the Greenberg matter. Further, SNL's failure to apprise Philadelphia of the Greenberg complaint in its Renewal Application constituted a material misrepresentation, and the Policy issued in reliance on that misrepresentation should be rescinded. Furthermore, SNL is not entitled to its fees or costs under the Virginia Code, as there is no evidence of bad faith by Philadelphia in this case.

WHEREFORE, the Motion for Summary Judgment of plaintiff SNL Financial, LC should be denied, and Philadelphia's Motion for Summary Judgment should be granted.

                                                Respectfully submitted,

                                                _____/s/_____
                                                David D. Hudgins (Virginia Bar No. 20602)
                                                Hudgins Law Firm
                                                515 King Street, Suite 400
                                                Alexandria, VA  22314
                                                (703) 739-3300; Fax: (703) 739-3700
                                                dhudgins@hudginslawfirm.com
                                                *Counsel for Philadelphia Indemnity Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of September, 2009 I forwarded electronically defendant's Opposition to SNL's Motion for Summary Judgment to the following counsel of record:

Thomas E. Albro (Virginia Bar. No. 12812)
Tremblay & Smith, LLP
105-109 East High Street

P.O. Box 1585
Charlottesville, VA 22902
(434) 977-4455; Fax: (434) 979-1221
Tom.Albro@tremblaysmith.com
*Counsel for SNL Financial, LC*

Dennis S. Rooker (Virginia Bar No. 16459)
Dennis S. Rooker, PC
1421 Sachem Place, Suite 3
Charlottesville, VA 22901
(434) 977-7424; Fax: (434) 974-7600
*Counsel for SNL Financial, LC*

　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　David D. Hudgins