CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 3 0 2009

JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SNL FINANCIAL, LC,<br><br>*Plaintiff,*<br><br>v.<br><br>PHILADELPHIA INDEMNITY INS. CO.,<br><br>*Defendant.* | CIVIL NO. 3:09cv-00010<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross motions for summary judgment [docket nos. 38 and 40]. The case was removed from state court on the basis of diversity jurisdiction. The Plaintiff brings this suit for a declaratory judgment that an employment practices liability insurance policy issued by the Defendant to the Plaintiff covers a lawsuit brought by one of Plaintiff's former employees for age and disability discrimination. Additionally, Plaintiff seeks attorney's fees pursuant to Virginia Code §38.2-209.

The Defendant's answer to the Complaint, filed in state court, asserts a counterclaim for declaratory judgments that the policy is rescinded due to the Plaintiff's false representations on the application for renewal of the policy, that the Defendant has no duty to defend the underlying employment suit, and that the Defendant has no duty to indemnify the Plaintiff for any damages imposed as a result of the suit. For the reasons that follow, the Court will grant in part and deny in part Plaintiff's motion for summary judgment, and deny Defendant's motion.

## I. BACKGROUND

The Defendant issued an insurance policy (the "policy") to the Plaintiff for the period from August 1, 2008 to August 1, 2009. This policy was a renewal of a policy "with substantially identical insuring provisions" for the previous year. The policy covers losses (including damages and defense costs) from "claims made against the Insured during the Policy Period . . . and reported to the Underwriter pursuant to the terms of this Policy, for an Employment Practice Act." *See* Policy, Part 2. An "Employment Practice Act" includes, *inter alia*, violations of employment discrimination laws. The policy defines a "claim," in applicable part, as: (1) a written demand for monetary or non-monetary relief; (2) a judicial or civil proceeding commenced by the service of a complaint or similar pleading; (3) an EEOC Charge. The policy provides that a claim is made "when an Insured first received notice of the Claim." The policy further provides that in the event a claim is made against the Insured, it must provide notice of the claim to the Defendant "as soon as practicable." The date of mailing constitutes the date of the notice.

Mike Chinn, the president of SNL, received a letter dated January 18, 2008 from an attorney, Murray Schwartz, on behalf of one of Plaintiff's former employees, Stephen Greenberg. The letter stated Schwartz's desire to meet with SNL to discuss "certain discriminatory conduct that occurred during the course of [Greenberg's] employment with [SNL], including its [*sic*] termination." SNL's Chief Talent Officer, Michael Latsko, sent an e-mail on January 23, 2008 to Sean Gibbons, an attorney who specializes in labor and employment law at the firm of Williams Mullen in Richmond, attaching the January 18, 2008 letter. The e-mail was titled "Stephen Greenberg Legal Action." Mr. Gibbons sent a letter of representation to Greenberg's attorney on February 1, 2008. Mr. Gibbons also sent an email

titled "Litigation Hold," instructing SNL to preserve all evidence which might be relevant to Greenberg's potential claims. SNL received another letter from Greenberg's counsel dated January 25, 2008, which reiterated the desire for a meeting to "pursue a possible amicable resolution of the issues."

The Plaintiff's attorney, Sean Gibbons, spoke to Mr. Schwartz several times after January 2008, but their conversations generally avoided the topic of Mr. Schwartz's letters to SNL. Mr. Gibbons had a conversation with Mr. Schwartz about the merits of Greenberg's claims on May 6, 2008. Mr. Gibbons eventually learned, either during a telephone call with Mr. Schwartz on June 18, 2008 or sometime later, that Mr. Schwartz had prepared a draft complaint on behalf of Greenberg. Mr. Gibbons spoke to Mr. Schwartz about the content of the complaint on July 14, 2008. Mr. Gibbons then sent a friend of his, also an attorney, to review the draft complaint in Mr. Schwartz's offices in New York, because Mr. Schwartz refused to send Mr. Gibbons a copy of the draft. That attorney asked Mr. Schwartz if he wanted to make any demand that would be relayed to SNL, but Mr. Schwartz declined.

On July 24, 2008, SNL submitted a Renewal Application for the policy. SNL's Controller, Corinna Hearn, was responsible for completing the Renewal Application, and she consulted with various SNL employees to obtain the necessary information. Question 24 asked whether SNL "had been the subject or involved in any litigation in the past twelve (12) months," Hearn initially left that question unanswered, apparently as an oversight. However, the Defendant required SNL to provide an answer to the question. Hearn contacted SNL's CFO, Teresa Torian, to determine the proper response; upon Torian's advice, Hearn checked the box for "no," signed the Renewal Application, and sent it in.

On August 12, 2008, Mr. Gibbons spoke to Mr. Schwartz again by phone. Mr. Schwartz stated at that time that Greenberg would accept $1.2 million in satisfaction of his claims against SNL. Mr. Gibbons responded with a letter dated September 9, 2008, rejecting that demand. That letter also set out SNL's position as to "why it believes that Mr. Greenberg's allegations are unfounded."

On October 3, 2008, Greenberg filed his lawsuit against the Plaintiff in New York state court, alleging age and disability discrimination ("the Greenberg suit"). The complaint alleged claims under only New York state discrimination law, and did not include any claims under federal law. There is no dispute that Greenberg's claims are the type of claims that are covered by the policy. The Plaintiff received a copy of the complaint in that suit in the mail on October 20, 2008.

The Plaintiff provided notice of the Greenberg lawsuit to the Defendant on October 27, 2008, seven days after learning that the lawsuit had been filed. On November 21, 2008, the Defendant sent a letter to the Plaintiff denying coverage because the Plaintiff failed to provide the Defendant with timely notice of the claim and had failed to disclose the claim when the policy was renewed on August 1, 2008. The Defendant also notified Greenberg's counsel that it had denied the Plaintiff coverage for the suit.

Thus, the crux of the dispute between the parties, and the main issue in this case, is whether the Plaintiff complied with the notice provision of the policy. Because the Defendant has denied coverage for the Greenberg suit, the Plaintiff has retained counsel to defend the Greenberg suit and is still incurring the costs of the defense. The Plaintiff seeks declaratory judgment that the Greenberg suit is covered under the policy, as well as attorney's fees and costs for the instant case.

The Defendant asserts a counterclaim for declaratory judgments that the policy is rescinded due to the Plaintiff's false representations on the application for renewal of the policy, that the Defendant has no duty to defend the Greenberg suit, and that the Defendant has no duty to indemnify the Plaintiff for any damages imposed as a result of the Greenberg suit.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties agree that there is no genuine issue as to any material fact, and that the case is therefore ripe for the Court's decision on the parties' cross motions.

## III. DISCUSSION

### A. The Contract Dispute

As stated above, the heart of this dispute is whether or not the Plaintiff complied with the notice provision of the insurance policy. In particular, this Court must determine at what point in time the Plaintiff received notice of the underlying employment discrimination claim against it. As defined by the applicable portion of the policy, a claim is a "written demand for monetary or non-monetary relief."[1] *See* Policy, Part 4. There is no dispute that Virginia law applies to the interpretation of the insurance contract at issue here.

---

[1] The policy also defines a claim in part as a "judicial or civil proceeding commenced by the service of a Complaint or similar pleading." *See* Policy Part 4. However, the parties here agree on the timing of the service of the complaint. Thus, the relevant inquiry is whether the Plaintiff had notice of the claim at any time *before* receipt of service of the discrimination Complaint. Thus, the "written demand" component of the claim definition operates as the only relevant definition for this dispute.

5

In Virginia, "[a]n insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Hill v. State Farm Mutual Auto. Ins.*, 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989). In addition, in the absence of ambiguity, a court must "interpret the contract by examining the language contained therein." *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., Inc.*, 240 Va. 457, 459, 397 S.E.2d 876, 877. "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Company v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965) (citations omitted).

When analyzing the terms of a contract under Virginia law, a court "must not strain to find ambiguities." *Resource Bankshares Corp. v. St. Paul Merucry Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005). A contract term "is not ambiguous simply because parties disagree about its meaning, or because courts have reached different conclusions as to its definition." *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F.Supp.2d 785 (E.D. Va. 2001). A provision of an insurance contract is ambiguous "when, in context, it is capable of more than one reasonable meaning." *Resource Bankshares* at 636 (citations omitted).

Under Virginia law, a party seeking coverage under the terms of an insurance policy bears the burden of proving by a preponderance of the evidence that it is entitled to coverage. *Capital Environmental Services, Inc. v. North River Ins. Co.*, 536 F.Supp.2d 633 (E.D. Va. 2008), citing *Town Crier, Inc. v. Hume*, 721 F.Supp. 99, 101 (E.D. Va. 1989). However, the insurer bears the burden of proving that any coverage exclusion applies. *Id.* at 641 (internal citation omitted).

6

If the terms of an insurance contract are plain and clear, and not in violation of law or inconsistent with public policy, courts are bound to adhere to their terms. *Pilot Life Ins. Co. v. Crosswhite*, 206 Va. 558, 145 S.E.2d 143 (1965). Where, however, the language of a policy is capable of different interpretations, it should be construed in favor of the insured. *United Services Auto Ass'n v. Webb*, 235 Va. 655, 369 S.E.2d 196 (1988). Indeed, in attempting to ascertain the intent of the parties, the court will "take cognizance of the fact that the policy is prepared by the insurance company and is apt to contain stipulations and conditions, at times complicated and of doubtful meaning, placed in the contract for the protection of the company." *Combs v. Hunt*, 140 Va. 627, 634, 125 S.E. 661, 664 (1925). Therefore, where a term is ambiguous, the Court will construe the term in favor of the insured. *Id.*

In this matter, the relevant facts are not in dispute. I find that the plain meaning of the applicable policy provision demonstrates that SNL satisfied the policy's conditions by furnishing notice of the Greenberg complaint on October 27, 2008. The nature of the correspondence between Schwartz and SNL does not constitute a written demand for monetary or non-monetary relief. Mr. Schwartz's unwillingness to provide a written copy of the draft complaint, or to even relay by local counsel a demand to SNL, demonstrates that SNL had in fact not received any written demand for relief. Moreover, the Schwartz letters lack the specificity that might have allowed SNL to understand what the former employee was either seeking or alleging. Plaintiff's counsel attempted several times to ascertain from Schwartz precisely what the nature of Greenberg's allegations or concerns might be, but was never able to get a straight answer. Indeed, for whatever unknown reason, Schwartz seemed to go out of his way to prevent SNL from obtaining knowledge of what Greenberg's potential

claims might be. Although Plaintiff did receive an oral settlement demand from Schwartz, that oral demand is not a written demand as defined by the policy.

Although Plaintiff created internal communications describing the Greenberg matter as "litigation" upon receipt of the Schwartz letters, the language Plaintiff or its counsel used to describe the communication from Schwartz is not controlling. Rather, the proper inquiry is whether or not SNL had received a written demand for monetary or non-monetary relief.

Additionally, a separate section of the policy demonstrates that Defendant could have crafted language requiring Plaintiff to report notice of a potential claim, had Defendant chosen to do so. Specifically, subsection B of the policy states:

> If during this **Policy Period** an **Insured** first becomes aware of any circumstances <u>which may subsequently give rise to a **Claim**</u> being made against any Insured for a specific **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to the **Wrongful Act**, dates and persons involved, then any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act** will be considered made during this **Policy Period**.

(Bolding in original; underlining added). This section grants Plaintiff the *option* to inform Defendant of "circumstances which may subsequently give rise to a Claim." By contrast, subsection A requires Plaintiff to report as soon as practicable once a claim *is made*. This contrast further highlights the difference between the letters, draft complaint, and oral conversation relied upon by Defendant as a "claim," and an actual "claim" as defined by the policy.

Finally, Defendant's justification for denying Plaintiff's claim is not supported by the language of the policy. In Defendant's November 21, 2008 letter denying Plaintiff coverage for the Greenberg complaint, Defendant states in relevant part that Plaintiff's receipt of the

Greenberg letters in January 2008 constituted a "written demand sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it *might give rise to a claim for damages*." (Docket no. 12, Document 12-3, at p.13) (emphasis added). However, mere knowledge of circumstances or facts which might, at some later date, give rise to a claim for damages does not constitute either a "demand" or a "claim" under the terms of the policy

### B. Attorney's Fees

The Plaintiff asks this Court to find that Defendant's attempt to evade the clear language of the policy constitutes bad faith, and therefore Plaintiff is entitled to recovery of its costs and reasonable attorneys' fees pursuant to Virginia Code §38.2-209. That provision states in relevant part:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy. "Individual," as used in this section, shall mean and include any person, group, business, company, organization, receiver, trustee, security, corporation, partnership, association, or governmental body, and this definition is declaratory of existing policy.

The facts clearly demonstrate that Defendant has denied coverage for the Greenberg claim. Thus, Plaintiff is entitled to attorneys' fees if the Court determines that Defendant acted in bad faith in refusing coverage. "[I]n evaluating the conduct of an insurer, courts should apply a reasonableness standard." *Cuna Mut. Ins. Soc. V. Norman*, 237 Va. 33, 38, 375 S.E.2d 724, 726-27 (1989). Furthermore, a bad-faith inquiry requires:

> [C]onsideration of such questions as whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and

circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

*Id.*

In *Park Center III Ltd. Partnership v. Pennsylvania Mfrs. Ass'n*, 30 Fed.Appx. 64 (4th Cir. 2002), the Court of Appeals examined whether a property insurer's denial of coverage under an insurance policy should be considered bad faith under Virginia Code §38.2-209. Specifically, the Court reviewed whether the District Court properly denied attorneys' fees under the statutory standard. *Id.* In denying the plaintiff's request for attorneys' fees, the District Court found that the plaintiff insurance company "had a legitimate, arguably supportable, basis for its refusal to pay the claim." *Id.* at 74. The Fourth Circuit, in turn, affirmed the District Court's finding, as well as implicitly affirmed the standard used by the District Court in making its bad-faith determination. Accordingly, if the Court finds that Defendant had an arguably supportable basis for its decision to deny Plaintiff's claim, it must deny Plaintiff's motion for attorneys' fees.

I find that Defendant's actions here do not rise to the level of bad faith. Although I conclude that Defendant violated the language of the contract in denying coverage for the Greenberg action, it did not do so without taking reasonable investigatory steps. Specifically, Defendant investigated whether Plaintiff had received prior notice of the Greenberg complaint, and in doing so obtained information that led it to believe that coverage under the policy should be denied. Although Defendant's decision to deny coverage was improper, it appears that the decision was nevertheless based on a thorough and prudent investigation of the circumstances. Additionally, I find that Defendant's decision to deny coverage, although

improper, was nevertheless arguably supportable based on its investigation, and was not so unreasonable as to constitute bad faith. Finally, there is no evidence that Defendant refused coverage merely as a tool for settlement negotiation. Plaintiffs are, of course, entitled to costs as prescribed by Rule 54 of the Federal Rules of Civil Procedure.

## V. CONCLUSION

For the reasons stated herein, the Court will grant in part Plaintiff's Motion (docket no. 38), and deny in part Plaintiff's Motion to the extent it asks this Court to grant attorneys' fees. Defendant's Motion (docket no. 40) is denied. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record

ENTERED: This 30th Day of Sept, 2009

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE